UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

JAMES D. SELEYLO and
STEPHANIE P. SELEYLO,

      Plaintiffs,

v.                                    Case No.  2:09-CV-261-UA-DNF

ALFREDO J. SARARO, III, SARARO
HOLDINGS, LLC, ALANA SARARO,
and FIFTH THIRD BANK,

      Defendants.

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Alfredo J. Sararo, III's Motion for Rule 11 Sanctions (Dkt. 145) and Plaintiffs' Response in opposition (Dkt. 146). The Court, having reviewed the motion, response, and being otherwise advised in the premises, concludes that the motion should be denied.

## BACKGROUND

On April 30, 2009, Plaintiffs filed this action against Defendants. Plaintiffs' second amended complaint included RICO, civil conspiracy, and fraud claims against Defendants related to a series of real estate investments. Plaintiffs maintained a close, personal friendship with Robert P. Horgos, a non-party to this action, for many years. Horgos also befriended Defendant Alfred J. Sararo. Plaintiffs alleged that around 2005, Sararo and others told Horgos about a "beach front mansion" located near Naples, Florida, whose owners were

in financial difficulty.  The property was going to be placed by Defendant Fifth Third Bank into the Pre-Foreclosure Program.  Sararo told Horgos to tender $25,000 as a down payment on the mansion, or he would lose the opportunity to purchase it.  Horgos tendered the down payment.  Thereafter, Sararo continued to tell Horgos that he would need to provide additional money in order to purchase the property and if he did not, he would forfeit the down payment.  Fifth Third Bank also notified Horgos that he would need to deposit additional money by January 4, 2006, to purchase the property, or he would risk losing the money that he had already deposited.

Horgos contacted Plaintiffs and told them about the property and the Pre-Foreclosure Program.  He also told Plaintiffs that he could resell the property by February 26, 2006, and make a substantial profit.  However, Horgos needed to borrow $450,000 from Plaintiffs to complete the transaction.  Based on this information, Plaintiffs agreed to give Horgos a personal loan of $450,000.  Horgos drafted and executed a loan agreement and agreed to give Plaintiffs $100,000 in interest.  Subsequently, Horgos deposited the loan from Plaintiffs into his Fifth Third Bank account.

Subsequently, Sararo notified Horgos that his additional down payment was late and his deposit would be forfeited.  Fifth Third also notified Horgos that it would not agree to sell the mansion to Horgos.  Sararo told Horgos that if he purchased two other properties from Fifth Third's Pre-Foreclosure Program, he would not lose the investment.  According to Plaintiffs, there never was a mansion and the alternate properties were not owned by Fifth Third or any other bank; they were owned by a private individual who sold them to Sararo.

Sararo, by quit claim deed then transferred the properties from his own name into joint names with Horgos.  At this time, Sararo and employees of Fifth Third Bank had documents requiring Horgos' signature to be notarized, although they were not signed by him in their presence.  The documents were signed by only Sararo with other signature lines left blank. Subsequently, Sararo transferred the properties, without Horgos' consent or knowledge, and Sararo kept all of the proceeds from the sale.  Thus, Horgos did not have the ability to repay Plaintiffs all or part of the $550,000 due and owed to them.

Plaintiffs alleged that they lost their money as a result of Defendants' actions, which amounted to an unlawful real estate scheme.  Plaintiffs alleged that Sararo ensured that Horgos made all of the communications with Plaintiffs, using Horgos as his surrogate. Plaintiffs argued that they were the targets of Defendants' real estate scheme because Defendants knew that Horgos did not have the money to continue paying to further the investment plan.

On July 28, 2011, United States District Judge Charlene Edwards Honeywell dismissed Plaintiffs' second amended complaint for lack of standing (Dkt. 135).  Judge Honeywell concluded that, although Plaintiffs alleged that Sararo, on his own behalf and others, made false and deceptive statements to Horgos with regard to the Pre-Foreclosure Program, ownership, price, and availability of real estate, Sararo made no misrepresentations to Plaintiffs.  Plaintiffs relied solely on Horgos' assertions, even those that turned out to be inaccurate, relating to the purchase of the beachfront mansion.  And the conduct directly causing Plaintiffs' harm was distinct from the conduct giving rise to the alleged fraud.

Horgos harmed Plaintiffs when he failed to repay the loan; the alleged fraud was Defendants' representations to Horgos about the real estate investments in Florida.

On July 29, 2011, final judgment was entered against Plaintiffs (Dkt. 136).

A timely appeal was taken to the United States Court of Appeals for the Eleventh Circuit.  On November 21, 2012, the Eleventh Circuit issued a *per curiam* opinion, noting that, having reviewed the record and considered the oral argument of counsel, the district court's dismissal of the RICO claim was affirmed (Dkt. 143).

On January 24, 2013, Sararo filed the instant motion for Rule 11 sanctions (Dkt. 145). Sararo argues that this case was without merit, in fact and in law.  Specifically, Sararo argues that Plaintiffs' lawsuit was "frivolous".

## DISCUSSION

### I.    Rule 11

Pursuant to Federal Rule of Civil Procedure 11(b), any individual who files a pleading, written motion, or other paper with the Court implicitly certifies that, to the best of that person's knowledge after a reasonable inquiry:

> (1) [the paper] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Regarding Rule 11's "safe harbor" provision and requirement to file a motion for sanctions by separate order, Rule 11(c)(2) provides as follows:

Motion for Sanctions. A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

The purpose of Rule 11 sanctions is to "reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers." *Kaplan v. DaimlerChrysler, A.G.,* 331 F.3d 1251, 1255 (11th Cir. 2003) (quoting *Massengale v. Ray,* 267 F.3d 1298, 1302 (11th Cir. 2001)). *See also Didie v. Howes,* 988 F.2d 1097, 1104 (11th Cir. 1993) ("Rule 11 sanctions are designed to 'discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses ... They 'may be imposed for the purpose of deterrence, compensation and punishment.'") (citations omitted).

Rule 11 sanctions are warranted in three scenarios: (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad

faith for an improper purpose. *See Didie,* 988 F.2d at 1104 (citations omitted ); *Kaplan,* 331 F.3d at 1255 (citations omitted ).

## II. Sararo Did Not Comply with Rule 11's "Safe Harbor" Provision

With respect to Rule 11's "safe harbor" provision, Sararo tersely states in his motion that "[P]ursuant to the "safe harbor" provision of Rule 11(c), Sararo served [Plaintiffs] with a notice that Sararo was going to pursue Rule 11 sanctions (see exhibit 1)." (Dkt. 145 at ¶3). Exhibit 1 is a letter dated June 11, 2009 to Tom Michael, Plaintiffs' counsel, from Robert A. Rosenblatt, Sararo's counsel. The letter states that Rosenblatt has been given the authority to accept service on Sararo's behalf. It then states "[o]n behalf of my clients, I specially reserve to apply for Rule 11 Sanctions, if appropriate." (Dkt. 145-1). This brief reference to reserving to apply for Rule 11 sanctions is woefully deficient under Rule 11(c).

A motion for sanctions under Rule 11 is "serious [ ]." Advisory Committee Notes to Rule 11, 1993 Amendments, p. 89. Consequently, when Rule 11 sanctions are initiated by motion, the moving party must serve a copy of the motion upon the opposing party at least twenty-one days before filing the motion with the court. Rule 11(c)(2). This "safe harbor" permits the opposing party to withdraw or appropriately correct the pertinent papers, thereby avoiding court-imposed sanctions. *See* Advisory Committee Notes to Rule 11, 1993 Amendments, p. 89. If, however, the opposing party does not withdraw or otherwise correct the challenged papers, and the court finds that Rule 11 has been violated, the court may impose sanctions upon the attorneys, law firms, or parties that are responsible for the violation. Rule 11(c)(1).

Here, the June 11, 2009 letter did not put Plaintiffs on adequate notice that Sararo intended to seek sanctions against Plaintiffs if Plaintiffs did not withdraw or dismiss their claims. The letter merely noted Sararo's reservation to apply for Rule 11 sanctions at some later date. Subsequently, Sararo never served Plaintiffs with a Rule 11 motion for sanctions. Thus, the instant motion for sanctions must be denied as procedurally deficient.

Notably, Sararo cannot argue that the instant motion for sanctions constitutes notice under Rule 11 because it was filed after judgment was entered in this case and after Plaintiffs would have had an opportunity to withdraw or dismiss their claims against him. Failure to give the opposing party the 21-day "safe harbor" provision forecloses relief under Rule 11. *Marcot v. Prem, Inc.,* 208 Fed. Appx. 781, 786 (11th Cir. 2006); *In re Pratt,* 524 F.3d 580, 586-88 (5th Cir. 2008). Courts consistently have held that "strict compliance with Rule 11 is mandatory." *Pratt,* 524 F.3d at 588. Moreover, the Eleventh Circuit has interpreted the safe harbor provision as requiring a motion for Rule 11 sanctions to be filed *prior to final judgment. See In re Walker,* 532 F.3d 1304, 1308 (11th Cir. 2008); *see also Orenshteyn v. Citrix Systems, Inc.*, 341 Fed. Appx. 621, 626-27 (11th Cir. 2009).

In sum, Sararo should have served his motion for sanctions, which clearly is directed against Plaintiffs' amended complaint, on Plaintiffs prior to the dismissal of this action. This would have put Plaintiffs on notice of Sararo's claim that the amended complaint was frivolous and provided Plaintiffs an opportunity to withdraw it, as permitted under Rule 11. "Rule 11 requires that the motion itself be served on the plaintiff, and failure to comply with

that requirement is fatal." *Geico General Ins. Co. v. Hampel*, 2012 WL 204284, at *2-3 (S.D. Fla. Jan. 6, 2012) (citing *Roth v. Green,* 466 F.3d 1179 (10th Cir. 2006)).

However, even if Sararo had complied with Rule 11's "safe harbor" provision, his motion would have been denied on the merits because Sararo has not made a sufficient showing that Plaintiffs' lawsuit was frivolous.  Given the benefit of hindsight, a review of this case demonstrates that Plaintiffs' claims may have been weak and subject to doubt due to a lack of standing.  Nonetheless, the claims were not objectively frivolous and Sararo makes no showing of conduct by counsel so egregious as to be tantamount to bad faith.  The record reflects that Plaintiffs conducted substantial pre-filing discovery in this case and, based on what they learned, believed that Sararo had masterminded a scheme to obtain money from the friends and family members of Horgos.[1]  Also, although they were ultimately unsuccessful, Plaintiffs also pointed to case law that provided them with some basis in law to argue their standing in this case.

It is therefore ORDERED AND ADJUDGED that:

1.     Defendant Alfredo J. Sararo, III's Motion for Rule 11 Sanctions (Dkt. 145)  is DENIED.

---

[1] Plaintiffs note that Sararo was subsequently charged with several fraud offenses, which were based in part on the conduct that Plaintiffs alleged in this action.  As a result of Sararo's criminal proceeding, restitution to Plaintiffs was set at $450,000, the amount Sararo received through Horgos.

2.      This case shall remain closed.

**DONE** and **ORDERED** in Tampa, Florida on February 15, 2013.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2009\2-9-cv-261.mtsanctions145.wpd